We move to the fourth case this morning. Gasser v. Village of Pleasant Prairie. Mr. Seifert. Yes, Your Honor. Can you hear me? Yes, we can. Okay. Thank you. You may proceed. Okay. Thank you, Your Honor. Your Honor, we're appealing a case against Pleasant Prairie. This is a case of a woman, 115-pound, slight woman, who was arrested and detained by the Pleasant Prairie Police Department and arguably compliant with the police directives, who was pushed down into a concrete bench and subsequently suffered severe injuries, which are ongoing today, incurring multiple surgeries and problems. I'm sorry, what? When they pushed down to the bench, she suffered severe injuries? Yes, the bench was concrete, Your Honor, and she was a very small woman. I've seen the video. So, Your Honor, the question that we have before the court is whether or not the judge fairly or properly dismissed this in summary judgment. The judge in this case put himself in place of the trier of fact, and he decided the facts. The judge utilized a very narrow exception in allowing judges to do that, and we contend that the judge decided this based only on the video without reviewing all of the facts. The video itself, Your Honor, was grainy, 20 seconds, and the reasonableness that the judge applied a reasonable standard, he said that no reasonable under the totality of the circumstances, not just a 20-second video. There is other evidence that wasn't presented that could have been presented that the jury should have been allowed to hear. We contend that the video record is subject to reasonable dispute, just as argued under Gant v. Hartman. There is other evidence that needs to be presented the jury should hear. Mr. Seifert, could I ask you, were the officers in that setting, in that waiting room, did they have the authority to insist that plaintiffs stay seated? Well, that's a good question. I think the question is whether or not there's a lawful order for a police officer to tell a person they have to sit down. Do you want to rephrase it that way? You may. I think at times they do. I think that's also a question of reasonableness. Could they order a person to remain seated for lengthy periods of time? I think that might be arguably not lawful. There's nothing, it seems to me, unreasonable about the officers saying that a person who is being held at the entrance of the inn needs to stay seated. And I don't know that the size or gender of the suspect matters in that authority. If that is correct, are there any grounds to question whether the officers were ordering plaintiffs to sit down? I saw the officer on the video pointing, plaintiff not complying, and then the officer puts his hand on her shoulder and pushes her down. That seems pretty self-evident. What am I missing? The question, Your Honor, is not whether it was lawful for him to require her to sit. I think the question at that point was if it was lawful for him to do so, was the force he used excessive? And that's the determination of the judgment. So some force is permissible. Some force is permissible, but we take people as they are. And if a person is very, very large and if a person is very, very small and slight, less force is justified. Again, Your Honor, our contention is that's a question for the trier of fact to determine, not for the judge to do so in summary judgment and place the trier of fact. In applying a narrow exception that the judge applied, there can't be any question. It has to be absolutely clear. And in this case, it isn't clear. The defense used the video in the Scott case. In that case, there was a six-minute video, which was clear and was absolutely contradictory to the non-movement statements. In this case, we've got a 20-second video, which is grainy, and it's not contradictory. She's not contradicting the video. So we can't compare the video in the Scott case to this case that when the judge applied the narrow exception in Scott. Mr. Siever, should we consider that after the... By the way, I don't think there's anything grainy about the video. I think the video is actually very good from videos that I've seen, you know, comparative to what I've seen in police videos. It's very good. But anyway, just put aside the quality of the video. You know, you said we should consider other evidence. What about the evidence that she gets up and appears to be in no pain whatsoever, that she walks through the door, that she goes through all the DUI checkpoints, that she doesn't appear to complain about pain, she doesn't appear to limp, she doesn't... You know, it looks like this is... I don't dispute, by the way, that she had problems afterward. I think causation is perhaps an issue for you. I don't think that matters, though, to this case. But it doesn't appear... At least it doesn't appear to me that from the it appears that she was disregarding the officer's commands, that she sat down. I think that's pretty obvious. And then she gets up and she walks and there's no... She doesn't complain. There's no... What are we supposed to make of that? Well, Your Honor, appearances can be misleading. I agree. It may appear to be one thing, but injuries... People handle injuries differently. And if she was in pain, she may have not expressed it. She may not have shown it. The pain, the injury may have not manifested instantly. The pain may have occurred later. I think there's a question of a reasonable inference, which should be drawn in favor of the non-moving party. Whether or not the pain was instantaneous or she exhibited visual signs of pain, I think that shouldn't be inferred by the judge in summary judgment. That should be determined by the facts presented to the jury. I think in the case of raising such a narrow exception by the judge in placing himself as a trier of fact and making a reasonable misdetermination, there can't be any contradictory evidence. It has to be absolutely clear, as this court has determined in other cases. And I don't believe that's the case in this case. Yes? Cybert, did the plaintiff testify to dispute whether she was being told to sit down? Your Honor, I don't recall. I honestly don't recall if she testified to whether or not she was ordered to sit down or not. You've said she was arguably compliant, and this seems to go to the central issue at those key moments. If you don't remember, you don't remember, but we'll check. Or I'll ask Mr. Bitar. Thank you. I'll reserve the remaining time that I have for any rebuttal, Your Honor. Thank you, Mr. Cybert. Thank you. Bitar? Good morning, Your Honors. Remzi Bitar, Municipal Law and Litigation Group in Waukesha, Wisconsin. On behalf of the Village Pleasant Prairie, Officer Gaynor and Brickard, the defendant and the appellees in this action, the district court in this action properly guided itself through the law at issue, the Fourth Amendment standards, the material facts, and whether there was a genuine issue. And in going through that methodology, the court properly considered the video here. The video and the rule of Scott is not such an outlier as the appellants would have you believe. When the Supreme Court said that a court should look and take stock of a video on summary judgment, it was because the traditional summary judgment methodology says that the facts are viewed in the most favorable to the non-movement if there are genuine disputes to those facts. The court also said the non-movement must do more than show a metaphysical doubt about the facts. And the court further said that under the traditional norms of summary judgment methodology, that the mere existence of some dispute is not enough. And that's where the video comes into play. We don't always have video, and sometimes the video is grainy, but here we have a video that clearly depicts what happened. And as the Seventh Circuit said just last year in Johnson, or that was a 2019 case cited by the parties Johnson versus Rogers, that a conclusive video allows the court to know what happened and to decide the legal consequences. And here, the district court and this court can properly take stock of the video because it's clear, it's reliable, it captures the event. And under the Fourth Amendment standards of reasonableness, I'm not even sure that this rises to the level of force. An officer putting their hand on someone's shoulder, much like, and then sitting them down, is something that happens every day across this country, whether it's in school, homes, what have you. But even if it was to be considered force, it was certainly reasonable under the circumstances. They had been with her at this point for four and a half hours since this started. And as the court has already seen in the video, she's clearly becoming quite conversational and argumentative with them about the nature of the case. And Ms. Gasser testify to dispute the officer's assertions that they were directing her to sit down and that she was not complying. Did she dispute that? There was never a deposition of Ms. Gasser because the plaintiffs here twice failed to produce her for her deposition. Was there an affidavit from her to the disputes at that point? There is an affidavit from her, and her affidavit disputes everything, unsurprisingly, just like in Scott and in many of these other cases where she's indulging in a great deal of storytelling about what was going on, what was in her mind, what she thinks was in the mind of the officers. And some of that is just not material. It is not material what was going through her mind. And what's material is whether the officers can reasonably apply their hand on her shoulder to have her sit down to maintain control. Right. Is it material whether they gave her first an oral command to sit down? They did, and they did that twice. Did she dispute that? I don't recall what she did in her affidavit on that point. Okay. But even if she did dispute it, I think the officers can reasonably adapt their response in order to control the situation. And rather than sit in that small room the size of a parlor and try to argue with her and argue with her, they were simply trying to maintain peace and calm and control rather than having the situation rise to anything further. And I think that that's pretty clear from the video that things got under control. And then she walked out under her own volition and everything was fine. The indulging in storytelling by Ms. Gasser is just like what happened in Scott. And we're not asking the court to do a side-by-side comparison of the two videos. What's important from Scott is the methodology and what the court said in terms of how you can do that. The storytelling is the same as in the Horton case, where this court actually heavily relied on video footage in an excessive force. It was a deadly force case. The same thing happened last year in the Johnson versus Rogers case, where the video itself was actually grainy and it lacked audio, but the court still found that it could draw some of the material facts and determine the legal consequences of that. Mr. Vetter, could I ask you just a question? I'm curious about this. As I understand the facts here, earlier in the evening, the officers were planning basically to just let plaintiff go home as long as she could get a ride, right? Yeah, at some point while they were at the hospital, they waited for her to try to make arrangements and she couldn't find arrangements within 20 minutes, 45 minutes, something like that, and then that's why they escorted her to the jail to detain her until she could either release herself or find a ride. The incident occurred in the day, not at night. I think it began shortly before noon and they arrived at the Kenosha County Sheriff's Department around four o'clock, and this incident, I think, occurred closer to 4 30 p.m. There's another case in the circuit cited by the parties called Dockery, another excessive force case, and there, as here, the plaintiff was again arguing that the video showed something else, giving it multiple interpretations, insisting they did not intend to resist the officer, but the court found that the video was conclusive, and that was a case actually, I think, involving a booking of an arrestee in the jail, multiple forms of control and use of the taser. In this case, we don't have any of that type of activity. Certainly, an officer can even take someone down and decentralize them. Johnson said that if the situation, in certain circumstances, do what to them? Either a decentralization, where you're bringing them down to maintain control, or a takedown, it goes by different names. Decentralization, I've heard before, it seems like an extraordinary euphemism. Yeah, I mean, and that's right, I mean, it does go by different names, but the point being that none of that type of conduct is occurring here. I think under all of the circumstances as shown by the video, the officers acted reasonably, and every single case that the plaintiffs have offered is either something where there is a much greater degree of force, or maybe the case that was decided on a motion to dismiss without the availability of a video and other facts to try to enlighten what actually occurred, and that was particularly the case in Lanigan, which they rely upon from 1997. That was a motion to dismiss case, so there was no video in that case at all, and so for all these reasons, the defendants respectfully request that this court affirm the decision of the district court. The district court got it right in applying the methodology of summary judgment properly, and taking stock of the video to find that this is not a constitutional offense by Officer Gaynor. Thank you, your honors. Thank you, counsel. I think, Mr. Seifert, do you have any comments? Thank you, your honors. Yes, just very briefly. Your honors, I'd just like to say that there's a reason that summary judgment is supposed to be rare. This court has held that even one violent push and poke will constitute excessive force without provocation. That's a jury question, whether or not there was provocation, and whether or not the excessive force was used, whether or not that push down onto the concrete bench caused her damage and was excessive. The defense likes to compare this to the Scott case and the video in that case, and they say use terms like just like in Scott, but there are some major differences between this and the Scott video. This video in Scott was six minutes long. This video was about 20 seconds long. In the Scott case, it clearly contradicted the person making the testifying. In this case, your honors, Ms. Straus is contradicting the video and arguing that she was, in fact, damaged by the video, and there is contradicted testimony. 20 seconds, as opposed to a six-minute video, should not be able to be used to apply a narrow exception in summary judgment. We believe that the jury should decide the material facts and not the judge, and that there are clearly questions of material fact, and this should be a jury question. I have nothing further, your honors. Thanks to both counsel, and the case is taken under advisement.